Okay, we'll go ahead to our third case for the morning. 21-3044 DeLong Company v. Syngenta. Mr. Drabble, you ready to proceed? Yes, your honor. May it please the court. This court should reverse the summary judgment for First, Wisconsin's tolling statute told the limitations period for DeLong's negligence claim during dependency in the class action, which asserted the same claim against the same defendants on behalf of a class that indisputably included DeLong. Second, Syngenta failed to satisfy its summary judgment burden of conclusively establishing that DeLong's negligence claim accrued more than six years before it filed a lawsuit. In reaching a contrary conclusion, the district court made multiple inferences against DeLong. Those inferences were not compelled by the summary judgment evidence and hence are not permissible. First, Wisconsin's tolling statute told the limitations period for DeLong's negligence claim. Unlike the vast majority of states, Wisconsin has expressly adopted cross-jurisdictional tolling by statute. Thus, this court does not need to weigh the policy concerns and attempt to divine whether Wisconsin's Supreme Court would exercise its equitable powers in these cases. Instead, its task is to interpret and apply section 893.15. That statute is short and unambiguous. It provides that a Wisconsin law limiting the time for commencement of an action on a Wisconsin causal action is told from the commencement of the action in a non-Wisconsin forum until the final disposition of that action. So, in applying that statute here, this court has to answer two questions. First, did the putative class action in this case assert the same cause of action? And second, did filing the putative class action commence an action on behalf of DeLong and DeLong's individual cause of action, even though the class was never certified? The answer to both of those questions is yes. First, the putative class action in this case asserts the same cause of action. Cause of action has a well-defined meaning under Wisconsin law. It is the operative facts that give rise to a right to relief. The operative facts in the putative class action in this case are the same. Sengenta's premature and negligent commercialization of the tariff. The defendants are the same, as is the underlying legal theory, common law negligence. And it's undisputed that DeLong was a member of the proposed class that was asserting that legal theory. Additionally, filing the class action commenced an action on DeLong's individual cause of action, even though DeLong was not a proposed class representative and the class was never certified. We, excuse me, subsection 2 of section 893.15 states that in a non-Wisconsin forum, the time for commencement or disposition of the final action is determined by that forum's local law. Since Transcoastal filed the original putative class action in the Central District of Wisconsin, in its brief, Sengenta attempted to distinguish between when commencement occurred and whether it occurred, but there's no distinction between those concepts. Commencement is the beginning, the beginning of a lawsuit. Because commencement is a point in time, determining when something commenced also tells you whether it commenced. It's unsurprising that Sengenta was unable to cite to any case distinguishing between those two concepts. Thus, we look to federal law, and federal law on this is clear. The commencement of the class action is treated as commencing an action on DeLong's individual claim. After all, a class action is nothing more than the aggregation of the class member's individual claims. So by asserting a negligence... May I interrupt you and can we put a pause on the cross-jurisdictional tolling for a second? If we agree with you on your interpretation of Wisconsin accrual law, do we need to reach the cross-jurisdictional tolling question? The interpretation of the Wisconsin statute is the cross-jurisdictional tolling, because of the Wisconsin statute. Well, I mean, there's two issues in the case, right? I mean, the first issue that the district court... You tell me. My understanding is that there's two separate questions in the case. One concerns cross-jurisdictional tolling, and one just concerns whether Sengenta's affirmative defense on the statute of limitations was correct. So whether you filed appropriately under Wisconsin law within the statute of limitations. There's two separate questions. Is that right? That's correct, Your Honor. There are two separate questions. Both go to the statute of limitations defense. Right. So my question concerns the first piece of it. So if we agree with you that you've... With your argument under the Wisconsin statute of limitations, would we need to reach the cross-jurisdictional tolling question? No. If you rule in either issue in DeLong's favor, it would warrant a remand in this case. If you determine that Sengenta did not show that DeLong's claim had accrued outside the limitations period, the case would be sent back, and that presents a jury issue that would be resolved at trial. If the court, on the other hand, determines that the tolling statute applies, that would make DeLong's negligence claim timely. There would be no jury question at trial at that point, because that would resolve the limitations defense. So we think that... So when does a negligence claim accrue in Wisconsin? Under Wisconsin law, a negligence claim accrues when the defendant's negligent acts or omissions actually harm the plan. And that's harm that either has occurred in the past or is reasonably certain to occur in the future. Sengenta did not show that that had happened in this case. The harms that DeLong was suing for were the economic harms that were caused by the loss of the Chinese market. And the Chinese did not begin rejecting shipments of corn until November of 2013, which had been well within the limitations period. So Sengenta's theory was that DeLong had harmed itself by taking these preventative measures before October 11, 2011. And the summary judgment evidence shows that the preventative measures were taken, but it does not show that there were any harm resulting from that. So for that reason, Sengenta did not conclusively establish that the claims accrued before October 11, 2011. Let me make sure I understand what you're saying. You agree that if DeLong anticipated some problems, he thought, you know, maybe China won't accept these deliveries, won't allow us to ship into China. So we need to have a plan B and they rented a silo or something to store things and paid out money for that. At that point, the cause of action would accrue. Do you agree with that? We do not agree with that, your honor. China never begins rejecting shipments. Then there's no case here. I mean, China either approved, but the court doesn't need to. So, okay. Well, maybe we don't need to get to it, but it's an alternative ground, which if you're correct on, would make it unnecessary for us to look at some of the but you're saying that if the misconduct in some way of Sengenta caused DeLong to expend money to do things to protect itself against the possible rejection of these products by China, you're saying that would not create a cause of action? We don't think so. Why? Why is that not injury? You've done something that makes us take preventive measures and it may turn out that they're not unnecessary, but if they were reasonable preventive measures and they cost a lot of money or they cost some money, then we could recover that money even if we end up ultimately being able to ship the product to that's our position. I'm sorry. I didn't mean to interrupt you. Our position is at that point, but that is just an anticipation of future harm of a miracle and showing door versus sorting. The fact that we anticipated that China could reject things would not be enough to make the cause of action. I mean, our fear of future harm is not good, but so, so, so if, so if that happens, say you spend a couple hundred thousand dollars on preventive measures and then it turned out China accepted the product, you couldn't recover against Sengenta for your reasonable response to their screw up and expending a couple hundred thousand dollars on preventive measures. Surely you can sue for that, can't you? I wouldn't think so. That is, as I said, I think that's just near anticipation of future harm. I doubt Sengenta would have been willing to concede that point had China started, had China always accepted foreign and DDGs containing MR162. And then we show up and say, hey, we did something. We want to be compensated for it. Your preventive measures have to be reasonable. I think you'd be pretty upset if you were, well, okay. I thought you were saying that and I was surprised to hear you say, but you're sticking to it. So let's go to the second point. Did you, in fact, expend any money or any loss through these preventive measures? I assume that was your alternative argument. Is that right? That's right. I would say that's one of the main arguments is that there's no evidence, or at least there's not conclusive evidence, that DeLong expended any money in these preventative measures. Sengenta points to Mr. DeLong's deposition testimony that the company tied up equipment in August or September of 2011. But Mr. DeLong never admitted that tying up that equipment caused any harm to the company, that it caused them to divert resources or even incur any expenses at all. So that testimony that the company tied up equipment would admit of multiple inferences, and one of which the company was just setting aside equipment that it already owned, but it wasn't using anyway. And under that scenario, there's no harm to the company. Let's say hypothetically, I'm opposing counsel and I'm opposing Mr. DeLong. And I say, did Sengenta's actions in August or September 11 cause you economic damages? And Mr. DeLong says, well, sure, I had to tie up the equipment, you know, that I would not have had to have done. Why isn't that subject to a, only to a reasonable inference that tying up the equipment did constitute damage? Because you are right, Mr. Gravel, that is, you quoted Mr. DeLong's answer correctly. But my recollection is, it was an answer to a question of, did you experience harm or loss in August or September of 2011? That's, you know, that's the elephant in the room. So in context, why is it, I guess in another way, we might put it, why wasn't he pinned down on that, that that was his answer of why he thought that they had experienced economic damage somewhere in 2011? First of all, the counsel's question is not the evidence, it's the opponent's testimony. And in some instances, you're right. You have to look at counsel's question in order to understand the testimony. In the example you just gave, Mr. DeLong started an example, his answer was sure. So you have to look at what he's agreeing to. But that's not the case here. Mr. DeLong's answer is complete in itself. You don't need to look back to the question to understand it. And in fact, when the deposition went on, they asked Mr. DeLong if the costs that, if he could quantify any costs, and he said no, that he couldn't. So there's that as well in the record. Unless the court has further questions, I'll reserve my remaining time for follow-up. Well, I'd like to follow up on Judge Bacharach's question. At some point, does Mr. DeLong say enough that the burden shifts to him to show that there wasn't an expenditure of resources? At some point, doesn't his answer create a presumption of loss? And if for some reason it didn't require any additional expenditure for personnel or space, he should be required to explain that and say that? If Mr. DeLong had testified that there was a cost to the company, then yes, the burden would shift to DeLong. No, but I'm saying he said we did have to reset aside equipment and do some things like that. No, you're wrong. Great. I'm sorry. I'm sorry I interrupted you. Well, I wasn't sure whether your answer. If he had said we had to set aside things, or several of his answers, it seems to me that one could argue they create a presumption that there was an expenditure of resources, that it did cost the company something to do that. You would expect that to cost the company to do something. And therefore, DeLong would have the burden of producing further evidence to show that there was an expenditure of resources. It's a shifting burden of proof within the summary judgment framework. Yes. Sure. If all that the dependents are relying on is a presumption to satisfy their summary judgment, as this court explained in Leon, which is excited extensively within our brief, if you admit evidence that admits a two equal inferences, one of which you win, and one of which you lose, then you haven't satisfied your summary judgment. Until you do that, there's no burden on the non-mobile to produce contrary. The non-mobile doesn't have a burden to negate inferences from the evidence because it's the benefit of those inferences. Judge Rossman, at the outset, I interrupted your line of questioning. I wanted to make sure you didn't have more you wanted to pursue. No, thank you. Okay. Oh, wait. There was an argument. There was an issue you said earlier on when you were talking about the tolling statute, Wisconsin tolling statute. You assume that the term cause of action in that statute has the same meaning we use in the restating of judgments in race judicata issues. Why do you say that? For one thing, it seems a little inconsistent to say a law limiting the time for commencement of an action is told by the commencement of the action to enforce the cause of action to which the period of limitation applies. If we're interpreting cause of action as broadly as you are, as any claim that could be raised based on this set of facts, then you're going to have ordinarily several different periods of action, which makes me think that the statute does not mean what you say, but is using cause of action in a narrower sense of the claim you're raising. In other words, if you didn't raise the specific claim, if the claim you're making now wasn't raised in the prior action, then the prior action can't toll the period of limitations. Would you respond to that? Uh, yes, your honor. I have three responses to that. First, we give, and we have asked this court to give cause of action that meaning because it is a well-defined legal term. You're all familiar with the canons of statutory construction. When a term has a well-defined meaning in law, we presume that the legislature intended to do that. That's the rule. Yeah, but that's contextual. There were a number of different, the word void is a well, there are a number of definitions of void in different contexts. Go ahead. That's absolutely true. I mean, statutory construction is always contextual, and that's true under Wisconsin law as well, but there's nothing else in the statute that would indicate that there's a different meaning. As far as your concern about having different periods of limitation to apply, there's nothing unusual about that. I mean, litigants often bring a combination of court contract claims that have different limitations periods, and in this case, there's no exception. And finally, even if, even if we got to defining cause of action as a specific legal theory or claim, that's satisfied here because the transcoastal had asserted a common law negligence claim as part of the period of Thank you. Thank you. Mr. Yu. Yes, Your Honor. May I begin? Yes, please. May it please the court, DeLong's case is time barred both because of when it sustained harm and because the transcoastal class action did not commence DeLong's claim. Let me begin with harm. We specifically asked DeLong's corporate representative whether the company incurred costs in response to the launch of MIR 162. He answered, well, we had to isolate it. We had to have a separate dump facility. The witness went on in the very same answer to say we had to have a dump pit, wet dryer, wet holding tank, and a finished product tank that we tied up for that corn to keep it isolated. And importantly, those actions were taken in response to the launch of MIR 162, where the complaint alleged that Syngenta was negligent in launching the product in the first place and allegedly contaminating the U.S. corn supply back in the spring 2011. That's in the record at volume one, page 117, which on that page contains paragraph 339 of the complaint. No reasonable jury could find it was costless for DeLong to redirect its corn intake facilities to set up separate handling for MIR 162 versus non-MIR 162 corn. Now, DeLong argues that the witness wasn't talking about costs, but the question specifically asked him, was there a cost to DeLong? That's what the witness pointed to when there was no suggestion that he wasn't talking about costs and that there were no costs. Well, you know, Mr. Yu, let me, I'm sorry, if you don't forget your train of thought, but the bottom line question to me is, well, was he sufficiently pending? A lot of times witnesses and depositions in trial will answer a question that they thought that they heard, and frankly, some ambiguity in the terminology of the question. What does the word cost mean to Mr. DeLong versus what did, you know, the trial judge think of the term cost when he or she is instructing the jury? Now, if Mr. DeLong had called his office manager and said, make sure you have all of this equipment aside, because, you know, I'm writing a, you know, a nasty letter to Syngenton saying that you've got to do all of this testing because they're already approving this, you know, this chemical integration of the corn to, that will be exported to China. And so I just want to make sure that if they say, okay, well, you can do all this testing that we've got this equipment set aside, that answer that Mr. DeLong gave would have been consistent with that interpretation of the question, right? So if he, if he basically just said, office manager, make sure you put a call into somebody that leases industrial equipment to John Deere and make sure we've got all this that we can get in 24 hours, that would be tying up, you know, the equipment, right? Or if he had surplus equipment. Except your honor, the witness spoke in the past tense. In other words, we asked him, was there a cost to DeLong? He pointed to the tied up equipment, the need to separate facilities, and not even a summary judgment declaration argued that the equipment or personnel were otherwise idle with nothing to do. And in terms of timing, we asked him, was that the spring 2011? And he no, probably August or September. But those were all those were all acts undertaken in anticipation of injury. No, no injury had yet occurred. I mean, I guess I'm just trying to understand Wisconsin negligence law. It seems is it is it just so unusual that in that in Wisconsin, you can sue a party for for anticipated negligence? Your honor here, it wasn't anticipated by the complaint, our negligence with launching the product in the fall 2010 for planting in the spring 2011. And the complaint specifically alleged that we contaminated the US corn supply back in the spring 2011. Again, that's in the complaint is volume one of the record 117. And so even beyond Mr. DeLong's testimony, there was also more in terms of harm to DeLong. Mr. McClymont discussed the impact on the business of imposing a new contract term because of MIR 162. He testified, quote, obviously it was affecting it on September 16, 2011. That's volume nine, page 189. We confirmed with him that position by asking him whether another document was consistent with what you were talking about before when you said DeLong's business was impacted by the commercialization of MIR 162. As of September 2011, his answer, yes, correct. That's volume 20, page 172. Indeed, DeLong's appellate reply argues there was no evidence of a customer concession or customer email saying, quote, we are regrettably returning your offer in the email chain reacting to the new contract terms and because the customer did not want any shipments from the 2011 harvest. That's volume nine, page 163. So in short, under DeLong's framing of the case, our negligence wasn't something that only occurred years later. It was in launching the product in the first place, allegedly contaminating the U.S. corn supply in the spring 2011. Asked whether there were costs, its corporate representative pointed to the tied-up equipment, its own employees pointed to the new contract terms, and even its summary judgment declaration never argued that its facilities or people were otherwise standing around with nothing to do. Of course, the city of Milwaukee case under Wisconsin law makes clear that under the modern trend, the diversion of employees would be recognizable, and here we have more than that. Equipment and labor for other things were tied up because that's what it means to be tied up, and beyond that, we have the new contract terms. What that also illustrates is why the declaration, its summary judgment, did not create a genuine issue of material fact. Mr. DeLong conveniently did not say that the equipment or employees were otherwise surplusage or sitting around idle. He did not deny that the diversion of resources harmed the business. He did not address at all the costs of the new contract term or the McClymont testimony, and so in short, summary judgment did not require us as the movement to disprove speculation. These really are... You did have to prove, you did have to present evidence that when we view the evidence in the light most favorable to the plaintiff, Mr. DeLong, that it would still have been barred by the six-year statute of limitations, and you do unquestionably present a lot of evidence. For example, Mr. McClymont, I may be mispronouncing his name, saying that they're impacted. Well, I can imagine a juror sitting here in the conference room saying, well, yeah, of course, they were impacted. They're having to deal with all of this. They're having to write letters. They're having to write subjective and demanding that they test equipment. You point to the letter where they were demanding testing, and they were attributing, demanding that the cost, the attributable be shouldered by Syngenta, and they say, well, was this a cost that was resulting from them launching the equipment? Yeah, this was a cost that we were incurring in the context of being asked about a bullet point where Mr. DeLong and others at DeLong were demanding that Syngenta incur those costs for the testing. So when you go through each one of these little pieces of the puzzle, I'm not sure that you as the movement have established that no reasonable inference can be drawn that DeLong was not experiencing a loss as of October of 2011. But it's your burden as the movement. Your Honor, our burden as the movement on this statute of limitations defense was to show that DeLong incurred an injury more than six years before filing suit. The statute of limitations defense does not require the defendant to prove up the quantum of the plaintiff's contested damages. What matters is there was an injury. Here we asked about costs. The witnesses confirmed that there were, and even at the summary judgment declaration, Mr. DeLong never denied that there were costs or injuries. The fact that there were goes to Judge Rossman's point. The fact that there were additional claimed injuries later from the Chinese rejections doesn't mean that the statute of limitations never began to run with the initial incurrence of costs from the alleged contamination of the U.S. corn supply. The Pritzlaff case cited in our brief makes that point. And so the district court really put it best in underscoring that the declaration did not clarify or address at all Mr. DeLong's testimony that it had tied up certain facilities by August or September 2011 and was incurring costs at that time, nor did he state that DeLong incurred no harm or damage. And that's really what matters for accrual here, that there was some form of damage, not that DeLong never bothered to quantify it. And of course, under the Hannakin's case, monetary loss is not the only form of recognizable injury, but here we have costs. Let me then turn to tolling under the statute. No, no, no, no. Let's let's keep on this a little bit longer. You're saying if there's an injury that's not compensable, that has no cost, that that would still toll? No, Your Honor. I'm saying that you... Not that would toll, yeah. Sorry about that, Your Honor. No, that the cause of action accrues when there's an injury, even if even if you couldn't sue and get any damages for it, shouldn't... The reason we said the cause of action accrues is because you could file suit. And what sort of injury are you talking about that doesn't involve costs that you could sue on? Your Honor, we are talking about the injury of the costs that were incurred because of the launch of MIR 162. Okay. Now, I must say, when I looked originally at the language of the deposition, it sure seemed like, yeah, there's been some costs here, but a more careful examination suggests there are loopholes. Were there costs? He doesn't say yes. He says, well, we had to do this, this, and this. And so I thought, well, gee, what more could the defendant have done? And one way to avoid this sort of ambiguity is through interrogatories or requests for admission, something along that line. So you work without tools to pin down whether, you know, how did you avoid expending any money to do the things you talked about? Explain. Yeah. Yeah. Go ahead. We specifically asked the witness, was there a cost to the long associated? He answered by pointing to the tied up facilities. He never suggested that he wasn't talking about costs or that there weren't any costs. And even his summary judgment declaration never said that there were no costs. That's not even in his summary judgment declaration. He doesn't deny that there were costs. So at best, the debate was about whether the quantum was 80,000 or 100,000 or something more than that. But for statute of limitations, the defendant is not required on summary judgment to prove up the quantum. What matters is that there is a cost, and here there was. And in addition to that, even separate from Mr. McClymon's testimony, we also have Mr. Sorry, separate from Mr. DeLong's testimony. We also have Mr. McClymon's testimony about the impact on the business of the new contract terms, where not even DeLong argues that it was somehow a benefit to the company. It was a cost to the company. And here again, unrebutted on summary judgment, even in the declaration. On that last point, there really is no evidence that they lost a customer. Well, you have the one exchange, the September 8th exchange, I think you referred to. Sorry, go ahead, John. Is that the only evidence you have, that they lost a customer or they had to make a concession to a customer to get the language they inserted in the contract? We had Mr. McClymon's testimony saying obviously it was affecting and that email exchange is the one we're pointing to. And of course, there's nothing in Wisconsin law to say you need two customers, one isn't enough. What matters is that there is an injury that's cognizable, and here there clearly is. Let me turn, if I could, to the tolling point under the statute and the time I have left. So importantly, the statute, section 893.15, is the one that deals with an earlier action filed elsewhere. And it says a Wisconsin law limiting the time of commencement of an action on a Wisconsin cause of action is told from the period of commencement of the action in a non-Wisconsin form. By its terms, the question is whether there was commencement of the action, not some other lawsuit by some other plaintiff. And importantly, American pipe tolling would not change the outcome. It wouldn't help the law, even if it applied, because American pipe is a tolling rule, not a commencement rule, whereas the statute looks at whether there was earlier commencement. Let me explain. The U.S. Supreme Court's decision in CalPERS made clear that the filing of an earlier class action did not constitute commencement of the absent class member's claims for an uncertified class. The very last section of the opinion was that it didn't thereby bring the individual actions. If the law... Hold on, hold on. Things are breaking up and I'm not sure. I think Judge Bacharach has a question. Sorry, there was lag. Go ahead, John. I couldn't hear what you were saying either because it was just garbled. So Judge Bacharach, did you have a question? I do, and I don't want to you wouldn't question that CalPERS was not talking about a statute of limitations. It was talking about a statute of repose, right? And that's the very point, Your Honor, that if DeLong's interpretation was right, the filing of an earlier class action thereby brought the individual's case, then CalPERS would have come out differently. There wouldn't have been a statute of repose problem, but in my... It may be, but we have a precedent involving a Bell Road that is precedent in the State Farm versus Boyle's Grove case where he specifically says that we are going to engage in the fiction that when the party is a member of the putative class with the same claim, regardless of whether that class is ultimately certified, we, the 10th presented precisely the same claim in the putative class action. And so now we have the issue of whether in 2017 dealing with an issue that isn't even the statute of limitations, whether CalPERS has abrogated our precedent. And I don't know how we can possibly say that our precedent in 2008 has been abrogated for purposes of statute of limitations from a Supreme Court opinion that was dealing with a statute of repose, which obviously has quite different policy implications and purposes. So several points, Your Honor. First, State Farm versus Bolendorf concerned an earlier set of actions in Colorado, which was a jurisdiction that had already adopted American pipe tolling, unlike Wisconsin. Second, that dicta, and it was dicta in State Farm versus Bolendorf, in no way informed the decision because the case turned on whether there was tolling, not whether there was commencement, which is the relevant question under this Wisconsin statute. Third, it doesn't survive, that dicta doesn't survive CalPERS, because the very last section of the opinion specifically says, even if the later individual case sued over the same securities law violations as the earlier class action, the Supreme Court said it defies ordinary understanding to say that that filing in a separate forum by a separate party in a separate date was the same action. And the court specifically emphasized that American pipe is a tolling rule. In other words, what CalPERS makes clear is that line of cases under American pipe addresses when federal statutes of limitations are told, not when an individual plaintiff's case is deemed to have started or commenced. And that's the relevant question under the Wisconsin statute here, especially because beyond that, Wisconsin courts have repeatedly taken a narrow approach to what constitutes commencement. Take the Colby case, even when the very same plaintiff had filed the earlier lawsuit, his failure to exhaust an administrative process meant that the earlier case didn't count. Bark River found that even when the plaintiff tried to intervene in an earlier lawsuit to say, here I am, I want to participate, that wasn't enough to if those examples aren't enough, it's certainly not enough here where DeLong waited for over a year after the class action was dropped in the MDL. And finally, the Barnes case in Wisconsin also makes the point emphasizing that even when the earlier case concerned the same overall course of conduct, even in an alleged multiple victim scenario, that's not enough because the cause of action is plaintiff-specific. So in short, your honors, DeLong would ask this court to find that the Wisconsin Supreme Court would disregard its plaintiff-specific approach to what constitutes commencement of a cause of action. And the CalPERS case makes clear that the class action did not commence DeLong's case because the state farm language is at best addicted in a case that DeLong had nothing on its side of the ledger to respond on summary judgment as to when it incurred costs. That was more than six years before filing suit, and its arguments really are an effort to wish the record away. For all those reasons, the district court's decision should be affirmed. Thank you. Mr. Drabo, I'm going to give you a minute and a half to respond on the tolling issue. You're smiling. Isn't that enough for you? Thank you, your honor. I was happy. I was going to take whatever I could get. I would like to address CalPERS. It does not apply and it does not undercut this court's decision in state farm for two reasons. First, there were two arguments in CalPERS. It's important to understand that. First, is that American pipe tolling applied? The CalPERS court said no, American pipe does not apply to statutes of equitable tolling. This case does not involve equitable tolling. Section 893.15 is a legal tolling rule, and it doesn't involve a statute of oppose. So that argument, that first holding, has no bearing on anything in this case. The second holding, the CalPERS court rejected an argument that did not depend upon tolling at all. What it said was under the statute at issue, the Securities Act of 1933, it says that a claim had to be brought, an action had to be brought within three years of the date the security was offered to sale. CalPERS, who had opted out of the class, said, well, an action was brought within three years, the class action. And the court said no, action means this action, and this action was not brought within three years. It's not enough that you can point to some earlier action that had been brought. It's enough that you have to show that this action was brought within three years. And that's not what has commenced a second action. But the issue before this court is whether the filing of the class action commenced the first action on behalf of the law. State Farm says that it did, it followed WorldCom, Securities, Second Circuit case said that it did, and I see my time has expired. Thank you very much, counsel. Do you have follow-up questions, anybody on the panel? I had a comment. I thought the briefs in this case and the arguments were just top-notch. Thank you. I'm sorry you said that because you took the wind out of my sails. I enjoyed this. It's very good. Thank you both, counsel. Cases, counsel are excused.